544 F.2d 162
 GAY ALLIANCE OF STUDENTS, an unincorporated association, Appellant,
v.
Alfred T. MATTHEWS, Individually, and as Dean of Student
Life at Virginia Commonwealth University, et al.,
Appellees.
GAY ALLIANCE OF STUDENTS, an unincorporated association, Appellee,
v.
Wyndham B. BLANTON, Jr., Individually and as a present
member of the Board of Visitors at Virginia
Commonwealth University, et al., Appellants,
and
Alfred T. Matthews, Individually, and as Dean of Student
Life at Virginia Commonwealth University, et al.,
Defendants.
 Nos. 75-2359 and 75-2360.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 7, 1976.
Decided Oct. 28, 1976.
 
 Richard E. Crouch, Arlington, Va. (John M. McCarthy, Richmond, Va., on brief), for appellant in 75-2359 and for appellee in 75-2360.
 Walter H. Ryland, Asst. Atty. Gen. of Virginia, Richmond, Va. (Andrew P. Miller, Atty. Gen. of Virginia, Richmond, Va., on brief), for appellees in 75-2359 and for appellants in 75-2360.
 Before HAYNSWORTH, Chief Judge, WINTER, Circuit Judge, and MARKEY,* Associate Judge.
 WINTER, Circuit Judge:
 
 
 1
 The Gay Alliance of Students (GAS), an unincorporated association of students at Virginia Commonwealth University (VCU), sued the Board of Visitors and certain administrative officers of VCU, seeking to obtain registration as a student organization and the attendant privileges of registration, which it alleged that defendants had declined to grant. The district court concluded not to decree registration, but it did direct that GAS be given certain privileges of registration, but not all. Both parties appeal.
 
 
 2
 To the extent that the district court granted relief, we affirm except in a minor respect. To the extent that the district court denied relief, we reverse. We remand for the entry of an appropriate decree.
 
 I.
 
 3
 GAS is an association of students, organized September 1, 1974, the stated purposes of which are (a) to develop a supportive community among individuals who believe in the right of self-determination with regard to sexual orientation, (b) to convene educational situations for members of GAS and for members of the university community regarding homosexual life, and (c) to advocate "gay" rights in concert with the civil liberties of all people. GAS disavows any purpose to provide professional counseling or therapy for persons having emotional or psychological problems arising out of or exhibited by specific sexual proclivities or patterns of sexual behavior. While the majority of its members are bisexual or homosexual in orientation, there is no membership requirement of a particular sexual orientation. Together with providing educational activities and discussion opportunities, GAS conducts social activities, including dances.
 
 
 4
 After GAS was formed, its members submitted to the VCU Office of the Dean of Student Affairs an application for registration as a student organization. The application, with revisions suggested by VCU's administration, was filed at the beginning of the fall term of 1974 in accordance with VCU's rules and regulations governing the registration of student organizations. Registration, if granted, carries with it these rights and privileges:
 
 
 5
 (a) Inclusion in a directory, furnished to each student, setting forth the names and activities of student organizations which a student may join;
 
 
 6
 (b) the furnishing of VCU consultation services on financial management, budget preparation and financial records;
 
 
 7
 (c) the use of VCU buildings for meetings and activities;
 
 
 8
 (d) the use of the campus newspaper, the campus radio station,[1] and the VCU bulletin boards to advertise the time and place of meetings and activities; and
 
 
 9
 (e) eligibility to seek and obtain VCU funding for carrying on activities.[2]
 
 
 10
 The application was not processed in the usual manner. It was referred to the Vice President for Student Affairs who forwarded it to VCU's governing body, The Board of Visitors, for ultimate decision. That body, by a split vote, rejected it without assigning reasons for its action. The GAS application was the only application to have been rejected, and it is the only application to have been submitted to the Board of Visitors. Currently, VCU has registered approximately 95 student organizations and in its history it has recognized 125-130 student organizations, some having political objectives.
 
 
 11
 Because the Board of Visitors assigned no reasons for its resolution denying registration, the parties have stipulated that the Board was motivated by the following:1. As a matter of logic, the existence of GAS as a recognized campus organization would increase the opportunity for homosexual contacts.
 
 
 12
 2. Recognition of GAS would tend to encourage some students to join the organization who otherwise might not join.
 
 
 13
 3. Some students may benefit from membership in GAS and some may not, and to some it would confer neither benefit nor detriment.
 
 
 14
 4. The existence of GAS would tend to attract other homosexuals to VCU.[3]
 
 
 15
 In stipulating VCU's reasons for denying registration, the parties stipulated further that the record (depositions, affidavits and admissions in pleadings) contained evidence to support these conclusions and that the district court should not substitute its appraisal of the evidence for that of VCU. The stipulation also recited that "(t)he trial court may consider any beneficient (sic) effects flowing from registration."
 
 
 16
 The district court found that there was no cognizable constitutional deprivation imposed by the withholding of recognition per se. However, the court did order that VCU provide GAS with access to VCU physical facilities for organizational meetings and activities; access to the campus newspaper space and campus radio broadcast time for advertisements pertaining to group activities, meetings, etc.; use of VCU official bulletin boards for posting notices pertaining to organizational activities; sufficient space for the operation of an orientation booth during semester registration; and a listing of the name and description of GAS in the student directory. In view of the fact that VCU was not to be required officially to recognize GAS, the Court added that "(w)e defer to the Board's discretion (in) resolution of the practical difficulties involved with properly designating GAS in the Student Directory and otherwise, in such a way as to conform to the Court's holding." The district court refused to require VCU to provide GAS with two other concomitants of formal recognition the right to consultation services on financial management, budget preparation, etc., and the right to make application for funds through the Appropriations Board.
 
 II.
 
 17
 At the outset, we state what this case is not. There is neither claim nor evidence that GAS as such engages in unlawful activities. So far as this record establishes, it is, at most, a "pro-homosexual" political organization advocating a liberalization of legal restrictions against the practice of homosexuality and one seeking, by the educational and informational process, to generate understanding and acceptance of individuals whose sexual orientation is wholly or partly homosexual.
 
 
 18
 GAS correctly posits its claim to registration upon the first amendment associational rights of its members. Healy v. James, 408 U.S. 169, 183, 92 S.Ct. 2338, 2347, 33 L.Ed.2d 266 (1972), makes clear that, in the context of the scope of protection which the first amendment affords to associational rights on a state-supported college campus, "the Constitution's protection is not limited to direct interference with fundamental rights." Quoting from Bates v. City of Little Rock, 361 U.S. 516, 523, 80 S.Ct. 412, 416, 4 L.Ed.2d 480 (1960), the Court added: "(f)reedoms such as these are protected not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference."
 
 
 19
 Consistent with Healy and Bates, we thus reject VCU's argument that the members of GAS have suffered no infringement of their associational rights because all that has been withheld is VCU's official seal of approval. Absent registration, there are admittedly no direct barriers to the members of GAS continuing to meet, to discuss the problems which homosexuals face, and to take lawful action to ameliorate some of these problems. But VCU concedes that a lack of recognition will hinder its recruitment efforts as well as to deny it VCU's services which are afforded to other registered student organizations. These denials are within the scope of Healy,[4] and therefore we conclude that there has been a denial of first amendment rights unless there is justification for the refusal of registration.
 
 
 20
 We turn therefore to VCU's purported justification for denying registration and the sequelae of registration.
 
 III.
 
 21
 One of VCU's reasons for denying the application was that granting recognition to GAS would increase the number of students who would join the organization. The premise of the argument is that registration of GAS would indicate VCU approval of GAS's aims and objectives and thus serve as an encouragement to students to join who might otherwise be disinterested in becoming members. Factually and legally, we disagree that registration would connote VCU approval of GAS's aims and objectives. First, VCU's registration of the large variety of other political, social and cultural organizations carries with it no approval by VCU of their aims and objectives. Indeed, an administrator of VCU testified flatly that "the registration and recognition of an organization does not, in any sense, carry with it approval or endorsement of the organization's aims." Second, we held in National Socialist White People's Party v. Ringers, 473 F.2d 1010, 1015 (4 Cir. 1973) (in banc), that when, under the compulsion of the first amendment, the state provides state-supported facilities to groups having discriminatory membership policies, state approval or support of those policies is not thereby forthcoming. We think that principle applicable here.
 
 
 22
 To the extent that registration would serve to encourage membership in GAS, aside from any implied approval by VCU, the result would accord with the purposes of the first amendment. "Among the rights protected by the First Amendment is the right of individuals to associate to further their personal beliefs." Healy v. James, 408 U.S. at 181, 92 S.Ct. at 2346. If it is the right of an individual to associate with others in furtherance of their mutual beliefs, that right is furthered if those who may wish to join GAS are encouraged by the fact of registration to take that step.
 
 
 23
 Another reason assigned by VCU for denying registration is that some students would suffer detriment thereby. As expressed in VCU's brief, " affiliation of individuals with homosexual activist organizations may have adverse consequences to some individuals involved." We are not impressed by this purported reason. The very essence of the first amendment is that each individual makes his own decision as to whether joining an organization would be harmful to him, and whether any countervailing benefits outweigh the potential harm. We are aware that in recent years colleges and universities increasingly are voluntarily surrendering the role of parens patriae of their students which they formerly occupied. But even if not surrendered voluntarily, the state and its agents are forbidden from usurping the students' right to choose. In this respect, the governing bodies of schools have no greater authority than do other state officials. Healy v. James, 408 U.S. at 180, 92 S.Ct. 2338; Tinker v. Des Moines Indep. Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). As the Supreme Court noted in Healy, a state college or university "may not restrict speech or association simply because it finds the views expressed by any group to be abhorrent." 408 U.S. at 187-88, 92 S.Ct. at 2349. Similarly, VCU may not hinder the exercise of first amendment rights simply because it feels that exposure to a given group's ideas may be somehow harmful to certain students.
 
 
 24
 VCU also relies on the proposition that "(a)s a matter of logic, the existence of GAS as a recognized campus organization would increase the opportunity for homosexual contacts" as a justification for denying recognition.
 
 
 25
 The meaning of the phrase "increase the opportunity for homosexual contacts" is not entirely clear. If the University is attempting to prevent homosexuals from meeting one another to discuss their common problems and possible solutions to those problems, then its purpose is clearly inimical to basic first amendment values. Individuals of whatever sexual persuasion have the fundamental right to meet, discuss current problems, and to advocate changes in the status quo, so long as there is no "incitement to imminent lawless action." E. g., Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969).
 
 
 26
 If, on the other hand, VCU's concern is with a possible rise in the incidence of actual homosexual conduct between students, then a different problem is presented. We have little doubt that the University could constitutionally regulate such conduct. Doe v. Commonwealth's Attorney for City of Richmond, 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976) affirming, 403 F.Supp. 1199 (E.D.Va.1975); Gay Students Organization of the University of New Hampshire v. Bonner, 509 F.2d 652, 663 (1 Cir. 1974). Additionally, it may regulate any conduct (homosexual or otherwise) which "materially and substantially disrupt(s) the work and discipline of the school," Tinker v. Des Moines Comm. Sch. Dist., 393 U.S. 503, 513, 89 S.Ct. 733, 740, 21 L.Ed.2d 731 (1969), quoted in Healy, 408 U.S. at 169, 92 S.Ct. 2338. See also Gay Students Organization, 509 F.2d at 663. But denial of registration is overkill.
 
 
 27
 "( T)he critical line for First Amendment purposes must be drawn between advocacy, which is entitled to full protection, and action, which is not." Healy v. James, 408 U.S. at 192, 92 S.Ct. at 2351. There is no evidence that GAS is an organization devoted to carrying out illegal, specifically proscribed sexual practices. While Virginia law proscribes the practice of certain forms of homosexuality, Va.Code § 18.2-361, Virginia law does not make it a crime to be a homosexual. Indeed, a statute criminalizing such status and prescribing punishment therefor would be invalid. See Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).
 
 
 28
 It follows that even if affording GAS registration does increase the opportunity for homosexual contacts, that fact is insufficient to overcome the associational rights of members of GAS. Given the right to exclude individuals who are convicted of practicing proscribed forms of homosexuality, or whose homosexual conduct, although not proscribed, materially and substantially disrupts the work and discipline at VCU, the suppression of associational rights because the opportunity for homosexual contacts is increased constitutes prohibited overbreadth. Healy v. James, 408 U.S. at 189, n. 20, 92 S.Ct. 2338; Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960).
 
 
 29
 Finally, VCU argues that its refusal to recognize GAS is justified because recognition of GAS would tend to attract other homosexuals to the University. For the reasons we discussed in regard to the claim of allegedly increased opportunities for homosexual contacts, we hold that this justification is prohibited overbreadth and therefore is legally insufficient to allow VCU to withhold recognition from GAS.
 
 IV.
 
 30
 We also conclude that the withholding of recognition from GAS denies that organization the equal protection of the laws guaranteed by the fourteenth amendment. All of the justifications put forth by VCU for the denial of recognition are based upon the nature of the issues which GAS intended to confront. Where the exercise of first amendment rights is made dependent upon the content of the message to be conveyed, the discrimination "must be tailored to serve a substantial governmental interest." Police Department of the City of Chicago v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). Here, as discussed above in connection with the violations of the first amendment, VCU's asserted justifications do not meet that standard. Thus, the denial of recognition to GAS violates the fourteenth amendment.
 
 V.
 
 31
 For the foregoing reasons, we conclude that so long as VCU maintains a program of registration of student organizations, its refusal to register GAS on the same terms and conditions as those applied to other student organizations violated the first and fourteenth amendments. Accordingly, the judgment of the district court must be reversed insofar as it failed to order VCU to register GAS and to grant to that organization all of the privileges normally associated with registration. Except with regard to access to the campus newspaper and radio, in all other respects the judgment is affirmed.
 
 
 32
 With regard to the campus media, the district court ordered that
 
 
 33
 the Board of Visitors . . . extend to plaintiff the following privileges of registration to the same degree and under the same circumstances as such privileges are available to formally recognized campus organizations:
 
 
 34
 2. Access to the campus newspaper space and campus radio broadcast time for advertisements pertaining to group activities, meetings, etc.
 
 
 35
 Since the record shows that the campus newspaper and campus radio station determined their content independently of control by VCU and that neither discriminated between registered and nonregistered organizations in making announcements of group activities and meetings, the acceptable limit of any decree would be to restrain VCU from taking any action which would restrict access to the campus newspaper space and campus radio broadcast time for advertisements pertaining to group activities, meetings, etc.
 
 
 36
 REVERSED IN PART, AFFIRMED IN PART; COSTS TO PLAINTIFF.
 
 
 37
 MARKEY, Chief Judge, Court of Customs and Patent Appeals (concurring):
 
 
 38
 I fully concur in the excellent and admirably succinct opinion of Judge Winter.
 
 
 39
 It may be useful to add that the case points up the futility of the association-registering process at state-supported institutions of higher education. If continued, it must be conducted in conformance with the First Amendment.
 
 
 40
 Consistent with the present decision, associations advocating any idea, any change in the law or policy of the general society, are as fully entitled to registration as is the plaintiff. Thus, associations devoted to peaceful advocacy of decriminalization or social acceptance of sadism, euthanasia, masochism, murder, genocide, segregation, master-race theories, gambling, voodoo, and the abolishment of all higher education, to list a few, must be granted registration, upon proper application and indicated compliance with reasonable regulations, if VCU continues to "register" associations.
 
 
 41
 That registration and recognition of an organization do not imply approval of its aims is, in my view, a fiction. The impression that the aims of registered and recognized associations are at least unobjectionable to university authorities is, of course, one of the reasons plaintiff seeks registration and is the fundamental rationale of defendants in refusing it. I think it clear that registration and recognition confer a status not enjoyed by unregistered and unrecognized associations. The conferring, withholding, or withdrawal of such status on the basis of the ideas and aims of applicant associations is precisely the action herein held to be constitutionally forbidden.
 
 
 42
 Thus the registration process cannot be used to aid or to impede the aims or ideas advocated by student associations. Denial or withdrawal of registration is a weak, if not impotent, tool in the university's exercise of its rightful duty to control conduct. Associations don't act. People do. Similarly, no association, college, or other institution, per se, has ethics or morals. Only people do. The futility of the registration process is thus illustrated by its non-availability for control of aims and ideas and by its inapplicability to conduct, ethics and morals.
 
 
 43
 It is of no moment, in First Amendment jurisprudence, that ideas advocated by an association may to some or most of us be abhorrent, even sickening. The stifling of advocacy is even more abhorrent, even more sickening. It rings the death knell of a free society. Once used to stifle "the thought that we hate," in Holmes' phrase, it can stifle ideas we love. It signals a lack of faith in people, in its supposition that they are unable to choose in the marketplace of ideas.
 
 
 44
 As Judge Winter points out, universities have been abandoning the role of parens patriae. Education without values is moribund. Nonetheless, having apparently decided that student associations devoted to advocacy of political, social, legal and other objectives are part of higher education and useful in preparation for later life, the universities must leave the exposition and inculcation of moral and ethical values to parents, the Church, university classes in ethics, the inspiring example of ethical university teachers and administrators, and student associations devoted to advocacy of those values. It cannot inculcate values by unlawfully impeding the exercise of a fundamental value, the right to speak.
 
 
 
 *
 Chief Judge, United States Court of Customs & Patent Appeals, sitting by designation
 
 
 [1]
 The campus newspaper and the campus radio station are autonomous in deciding what to print and what to broadcast. Customarily they give publicity to registered student organizations. They do not do so, however, at the direction of VCU
 
 
 [2]
 GAS concedes that not all applications for VCU funding are granted and, thus, even if eligible to apply, it might not obtain VCU funds
 
 
 [3]
 We search the appellant's appendix in vain for this stipulation. The district court, however, said that it was made and the briefs of the parties, in the statement of facts, recite that it was made. We therefore treat it as established in this record
 The parties also entered into stipulations of the evidence before the Board of Visitors on which it made its determination. Superficially, at least, the stipulated evidence was conflicting:
 There was evidence before the Board that the existence of GAS as an organization recognized by the University would tend to encourage "sexually confused" students to adopt the homosexual way of life and that medical authority is divided on the question of whether the opportunity to join and identify with a group such as the one proposed encourages people to make a homosexual identification who otherwise would not do so.
 Homosexuality is a continuum and that people line up on the continuum with varying degrees of homosexual tendencies, so that there are few people of 100% either homosexual or heterosexual traits.
 It is an erroneous concept that homosexuality is a matter of conscious choice, and sexual orientation is actually determined in the early years of life.
 
 
 [4]
 In Healy, the Students for a Democratic Society (SDS) sought official recognition as a campus organization at a state college. The Supreme Court sustained their right to be registered, subject to a showing that SDS would "comply with reasonable campus regulations." 408 U.S. at 193-94, 92 S.Ct. 2338. In the instant case, there is apparently no question that GAS would comply with VCU's rules and regulations. In Healy, the effect of registration would have permitted SDS to place announcements in the student newspaper, to use the college bulletin boards, and to use campus facilities for holding meetings