**Ken A. CYR, Individually, et al.**

v.

**T. S. WALLS, Individually, and as Chief of Police of the City of Fort Worth, Texas, et al.**

Civ. A. No. CA 4–75–51.

United States District Court,
N. D. Texas,
Fort Worth Division.

Oct. 31, 1977.

James C. Barber, Dallas, Tex., for plaintiffs.

S. G. Johndroe, Jr., City Atty., Donald K. Buckman, Asst. City Atty., Fort Worth, Tex., for defendants.

## MEMORANDUM AND ORDER

MAHON, District Judge.

There are now before the Court the issues of certification of the alleged Plaintiff classes and various motions by Defendants' relating to certification and dismissal of Plaintiffs' action.[1] These matters came on for hearing before the Court on 9 June 1976, at which time the Court took them under advisement. Due to the complexity of the issues raised, the Court has taken an inordinately long time in reaching its conclusions. The Court is now, however, of the opinion that the alleged Plaintiff classes should be conditionally certified to the limited extent set forth herein, and that Defendants' motions to dismiss should be denied.

---

1. Defendants' "Motion for Determination That This Case Is Not a Class Action; Renewed Motion to Dismiss; Motion for Partial Summary Judgment; and Motion That This Court Not Entertain the Pendent Jurisdiction or Declaratory Judgment Claims" (filed 22 October 1975),

"Amended Motion for Determination That This Case Is Not a Class Action" (filed 23 March 1976), "Amended Motion for Partial Summary Judgment" (filed 23 March 1976), and "Supplemental Motion to Dismiss" (filed 23 March 1976).

## I. NATURE OF THE SUIT

This is a civil rights action for damages, declaratory judgment, and injunctive relief for alleged violations of Plaintiffs' constitutional rights under color of state law pursuant to 42 U.S.C. § 1983, for alleged deprivation of Plaintiffs' rights to equal protection of the laws pursuant to 42 U.S.C. § 1985, and for alleged invasion of privacy persuant to the law of the State of Texas. Plaintiffs assert jurisdiction under 28 U.S.C. §§ 1343, 2201, & 2202.

This action was originally brought by the named Plaintiff, Ken A. Cyr, as the purported representative of a class allegedly composed of all gay [2] persons in the City of Fort Worth, Texas. This initially alleged class has subsequently been dropped and amended to take the form of several alleged classes: the membership of a Fort Worth organization for the advancement of the interests of gay persons, those individuals whose names or license plate numbers have been allegedly recorded by Defendants while such individuals were involved in non-criminal activities, all owners of gay bars in the City of Fort Worth, all regular patrons of gay bars in the City of Fort Worth, and all members of a Fort Worth church dedicated primarily to the service of gay persons.

The precipitating incident alleged is claimed to have occurred during a peaceful and lawful meeting of the Texas Gay Conference on 22 June 1974 at the Community of Hope Lutheran Church in Fort Worth, Texas. Plaintiffs allege that, on the occasion in question, three officers of the Fort Worth Police Department circled the church repeatedly, recorded the license plate numbers of numerous parked automobiles, and stopped some of the participants leaving the meeting for questioning and driver's license checks. Plaintiffs further allege that the license numbers and names recorded were later released for publication to Fort Worth newspaper reporters.

Plaintiffs' claims do not end with the allegation of the precipitating incident. They go on to allege a course of conduct by, and a conspiracy among, members of the Fort Worth Police Department to deprive Plaintiffs of equal protection of the laws by subjecting them to illegal surveillance, harassment, and unequal application of the law. Plaintiffs claim that this illegal surveillance and harassment are of non-criminal activity and are unnecessary to promote any compelling governmental interest.

Plaintiffs have prayed for relief in the following forms: (1) a declaration that the conduct of Defendants is illegal and deprives Plaintiffs of their constitutional rights; (2) a mandatory injunction requiring Defendants to destroy all illegally gathered material concerning Plaintiffs; (3) subsequent inspection by the Court to determine whether Defendants have complied with the mandatory injunction; (4) a prohibitory injunction restraining Defendants from conducting in the future any such allegedly illegal activities as those complained of by Plaintiffs; and (5) costs and attorneys' fees.

The broad questions now before the Court are whether the alleged classes of Plaintiffs should be certified and whether Plaintiffs have stated causes of action upon which relief can be granted.

## II. DISCUSSION

Controversies concerning the rights of gay individuals have surfaced only recently in the federal courts, but are becoming more common. This Court has studied a number of these cases, but has found no

---

**2.** Plaintiffs invariably use the term "gay" in describing the individuals and institutions for which they seek protection. Defendants, on the other hand, invariably use the term "homosexual" to describe the same persons and institutions.

While recognizing that these terms are often used interchangeably in the vernacular, the Court will attempt, for the sake of clarity in the Memorandum, to use the term "homosexual" in describing specific sexual acts and those persons who engage in, promote, or encourage such acts. The Court will attempt to use the term "gay" in referring to the more general aspects of the life-styles of those individuals who prefer the companionship of members of their own sex and of the commercial institutions that serve those life-styles.

case in point on the issues now before the Court. The reported cases are so tangential, and in such discord, that the Court will not attempt to summarize or discuss them in detail in this Memorandum. *See, e. g., Gay Alliance of Students v. Matthews*, 544 F.2d 162 (4th Cir. 1976); *Mississippi Gay Alliance v. Goudelock*, 536 F.2d 1073 (5th Cir. 1976); *Singer v. United States Civil Service Comm'n*, 530 F.2d 247 (9th Cir. 1976); *Norton v. Macy*, 135 U.S.App.D.C. 214, 417 F.2d 1161 (1969); *Gay Lib v. University of Missouri*, 416 F.Supp. 1350 (W.D. Mo. 1976); *Matlovich v. Secretary of Air Force*, 414 F.Supp. 690 (D.D.C. 1976).

The Court will, however, set forth a few cases that are closer to the issues involved herein than most and which generally discuss the constitutional rights of gay individuals.

The case most nearly in point in the Fifth Circuit is *Mississippi Gay Alliance v. Goudelock*, 536 F.2d 1073 (5th Cir. 1976), *cert. denied*, 430 U.S. 982, 97 S.Ct. 1678, 52 L.Ed.2d 377 (1977) [hereinafter *"Goudelock"*]. In that case, an off-campus gay group brought an action against a state university student newspaper editor and others to compel the publishing of a proposed paid advertisement in the student newspaper. The court of appeals affirmed the district court's refusal to require publication. Though both the trial and appellate courts' decisions were based primarily on a finding of no state action, the Fifth Circuit noted that homosexual conduct was a criminal offense in the State of Mississippi and that newspapers have the right to avoid becoming even peripherally involved in criminally related activity. 536 F.2d at 1075–1076 & n. 4. *See also id.* at 1078–1079 & n. 4–13 (dissenting opinion).

The *Goudelock* decision must be read in conjunction with *Gay Alliance of Students v. Matthews*, 544 F.2d 162 (4th Cir. 1976) [hereinafter *"Matthews"*], in which a gay student association sued a state university's governing board and certain administrative officers to obtain registration as a student organization along with all attendant privileges. The district court refused to decree

registration, but did direct that the association be given certain privileges of registration. The court of appeals reversed, holding that refusal to register the organization on the same terms and conditions as those applied to all other student organizations violated the plaintiff's First and Fourteenth Amendment rights. The appellate court noted that there was no claim nor evidence that the plaintiff participated in unlawful activities.

So far as the record establishes, it is, at most, a "pro-homosexual" political organization advocating a liberalization of legal restrictions against the practice of homosexuality and one seeking, by the educational and informational process, to generate understanding and acceptance of individuals whose sexual orientation is wholly or partly homosexual.

544 F.2d at 164.

[The University] also relies on the proposition that "[a]s a matter of logic, the existence of [Plaintiff] as a recognized campus organization would increase the opportunity for homosexual contacts" as a justification for denying recognition.

The meaning of the phrase "increase the opportunity for homosexual contacts" is not entirely clear. If the University is attempting to prevent homosexuals from meeting one another to discuss their common problems and possible solutions to those problems, then its purpose is clearly inimical to basic first amendment values. Individuals of whatever sexual persuasion have the fundamental right to meet, discuss current problems, and to advocate changes in the *status quo*, so long as there is no "incitement to imminent lawless action." *E. g. Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969).

If, on the other hand, [the University's] concern is with a possible rise in the incidence of actual homosexual conduct between students, then a different problem is presented. We have little doubt that the University could constitutionally regulate such conduct. *Doe v. Commonwealth's Attorney for City of Richmond,*

425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976) affirming, 403 F.Supp. 1199 (E.D. Va. 1975); *Gay Students Organization of University of New Hampshire v. Bonner*, 509 F.2d 652, 663 (1 Cir. 1974). . . . But denial of registration is overkill.

"[T]he critical line for First Amendment purposes must be drawn between advocacy, which is entitled to full protection, and action, which is not." *Healy v. James*, 408 U.S. 169, at 192, 92 S.Ct. 2338, at 2351, 33 L.Ed.2d 266. There is no evidence that [Plaintiff] is an organization devoted to carrying out illegal, specifically proscribed sexual practices. While Virginia law proscribes the practice of certain forms of homosexuality, Va.Code § 18.2–361, Virginia law does not make it a crime to be a homosexual. Indeed, a statute criminalizing such status and prescribing punishment therefor would be invalid. *See Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

It follows that even if affording [Plaintiff] registration does increase the opportunity for homosexual contacts, that fact is insufficient to overcome the associational rights of members of [Plaintiff]. Given the right to exclude individuals who are convicted of practicing proscribed forms of homosexuality, or whose homosexual conduct, although not proscribed, materially and substantially disrupts the work and discipline at [the University], the suppression of associational rights because the opportunity for homosexual contacts is increased constitutes prohibited overbreadth. *Healy v. James*, 408 U.S. at 189, n. 20, 92 S.Ct. 2338;

*Shelton v. Tucker*, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960).

544 F.2d at 166.[3]

Comparable to *Matthews* is *Gay Lib v. University of Missouri*, 416 F.Supp. 1350 (W.D. Mo. 1976), another case in which a gay student organization sought official recognition. In that case, the court denied relief on the grounds that a university atmosphere presented a special situation and that the University had borne its "heavy burden" of justifying its decision to deny recognition by presenting convincing and persuasive evidence that the recognition of the plaintiff "would likely result in the commission of felonious acts of sodomy proscribed by" state law. 416 F.Supp. at 1369. The court specifically found "that the requested recognition and activities thereunder are of such a basic nature as to likely incite and produce acts of sodomy in violation of state statute." 416 F.Supp. at 1370 n. 41.

It is appropriate to begin this Court's discussion of the present case by noting that homosexual *conduct* in the form of sodomy is a prohibited criminal offense in the State of Texas. Texas Penal Code § 21.06 provides:

(a) A person commits an offense if he engages in deviate sexual intercourse with another individual of the same sex.

(b) An offense under this section is a Class C misdemeanor.[4]

"Deviate sexual intercourse" is defined in Texas Penal Code § 21.01(1) as "any contact between any part of the genitals of one person and the mouth or anus of another person."

■ There can be no doubt that such state sodomy and homosexuality laws are constitutional. *Doe v. Commonwealth's At-*

---

**3.** It is of no moment, in First Amendment jurisprudence, that ideas advocated by an association may to some or most of us be abhorrent, even sickening. The stifling of advocacy is even more abhorrent, even more sickening. It rings the death knell of a free society. Once used to stifle "the thought that we hate," in Holmes' phrase, it can stifle ideas we love. It signals a lack of faith in people, in its supposition that they are unable to choose in the marketplace of ideas.

*Matthews, supra* 544 F.2d at 168 (concurring opinion).

**4.** A "Class C" misdemeanor is the least serious misdemeanor under the classification adopted by the State of Texas. There is no possibility of confinement for those adjudged guilty of such misdemeanors, nor is any legal disability or disadvantage imposed; the maximum possible fine is $200. Texas Penal Code §§ 12.03 & 12.23.

*torney for City of Richmond*, 403 F.Supp. 1199 (E.D. Va. 1975), *aff'd mem.*, 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976); *Rose v. Locke*, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975); *Goudelock, supra*, 536 F.2d at 1075.

But nowhere in Plaintiffs' complaint do they ask this Court for relief from police interference with unlawful activities. Instead, they ask for protection for individuals whom the police may suppose to be gay while those individuals are engaged in lawful activities of peaceful assembly and association.

The organizations through which Plaintiffs seek to assert class status appear facially to bear out Plaintiffs' assertions of peacefulness. The Metropolitan Community Church is an organization that caters primarily, though not exclusively, to the spiritual and worldly problems of gay individuals. The Texas Gay Conference is an organization devoted, at least in part, to the political and social aspects of liberalizing laws against homosexuality and discrimination against gays. The Awareness, Unity and Research Association [hereinafter "AURA"] is an association devoted to making gay individuals aware of their rights and to assisting them in taking advantage of those rights. Finally, the gay bars listed claim to serve only the social needs of gays for gathering, entertaining, dancing, etc., and not to allow or to encourage any homosexual conduct in the form of sodomy.

Of course, the peaceful nature of Plaintiffs' organizations does not prove their lawsuit. The police activities of which they complain are largely investigatory, and there may well be a sufficient connection established by later evidence in this action which will justify such general investigatory tactics in light of the criminal nature of homosexual conduct. Moreover, the Court notes that Plaintiffs will have a heavy burden in proving not only a course of conduct by the police which violates their constitutional rights, but also that such course of conduct is not justified in light of the criminal nature of homosexual acts conduct in the State of Texas.

But to grant Defendants' motions at this point would require the Court to adopt Defendants' convoluted argument that there can be no such thing as a "law-abiding" gay individual. Defendants assert (1) that only homosexuals are involved in this cause of action, (2) that the only way to define a "homosexual" is by his overt sexual conduct, and (3) that such conduct is illegal in the State of Texas. The alleged Plaintiff classes, however, apparently include non-homosexuals in the memberships of the various organizations and churches. And it stands to reason that not every patron of a gay bar is a practicing homosexual. Indeed, the thrust of Plaintiffs' action is alleged harassment of individuals whom the police believe to be gay. Moreover, the Court can take notice of the logical distinction between gay individuals who simply prefer the companionship of members of their own sex and homosexual individuals who actively practice homosexual conduct.[5] This entirely theoretical distinction could, of course, be redetermined on the basis of later factual proof.

■■■ Even accepting Defendants' logic, however, the Court notes that it would still not be justified in dismissing this action, since dismissal would be tantamount to recognizing homosexuality as a "status" crime. There mere propensity or desire of an individual to commit a criminal act does not permit state interference with that individual's freedom. The individual does not become a law violator until he commits an overt criminal act. Of course, as previously stated, Defendants may be able to conduct general investigatory actions in light of the criminal nature of homosexual acts in the State of Texas. The Court is not ruling on the merits of Plaintiffs' action at this point.

Turning from the motions to dismiss to the question of class certification, the Court notes that Plaintiffs face many logical problems in certification.

The Court must consider the question of class existence in relation to the relief re-

---

5. See note 2, *supra*.

quested. This fundamental consideration of class existence is often overlooked in the many complex rationales attempting to deal with the narrower requirements of Rule 23 of the Federal Rules of Civil Procedure [hereinafter "Rule 23"], but it is the most basic consideration of all and the one that unifies and relates the narrower, more technical requirements of class certification.

In the present case, Plaintiffs seek: (1) injunctive relief and Court action requiring the destruction of the alleged materials relating to alleged harassment at the meeting of the Texas Gay Conference; (2) injunctive relief prohibiting future harassment by the police; and (3) a declaration that the conduct of Defendants was illegal and unconstitutional. The declaratory relief is duplicative of the two types of injunctive relief sought.

Class existence is complicated in the present case by the fact that gay individuals are not readily identifiable, unlike individuals with certain racial or color characteristics, individuals with certain types of surnames, or individuals of a certain physical sex. If this Court were to grant relief which would prohibit police officers from harassing certain individuals, the police officers would have to be able to clearly and easily recognize those individuals. Otherwise, the relief would not be meaningful or enforceable. Since the sexual preference of an individual is not clearly and immediately apparent, the Court could not grant such relief nor certify a class such as that originally proposed—that is, all the gay individuals in Fort Worth.

By amending their complaint to allege certain narrower classes, Plaintiffs have attempted to define their classes in such a manner as to make them definable and recognizable. The gist of Plaintiffs' amended classes is the inclusion not of gay individuals per se, but rather the inclusion of individuals associated with certain gay institutions, so that the police might believe the individuals to be gay. This type of classification is logical, since any prejudiced harassment of individuals based on a char-

acter trait that is not immediately or clearly recognizable would have to be exercised based on the beliefs and perceptions of the harassing individuals. Moreover, any deprivation of constitutional rights would be suffered not only by those individuals who actually possess the particular character trait, but also by those individuals who give the impression of possessing that trail.

Nevertheless, problems of identifiability still exist in Plaintiffs' narrower classes. The Court will accordingly discuss each alleged class individually.

■ The first alleged class is the membership of AURA, allegedly represented by Plaintiffs Cyr and Ribble (past and current directors of the organization). This class is interested in the prohibitory injunctive relief. At the hearing, however, it was established that there is no current membership list and that AURA is so loosely structured that it is impossible to even approximate the number of members outside of the eight active leadership members. It was established, however, that approximately 20 persons attend each meeting of AURA; that regular meetings are held in 5 to 7 months out of the year on the first and third Mondays of each month; and that the meetings are always held at the same location.

The Court is of the opinion that it cannot certify the membership of AURA as a class, because of failure to meet the numerosity requirement of Rule 23(a)(1). In keeping with the general philosophy and intent of Plaintiffs' amended classes, however, the Court will construe the class as "those individuals who are in attendance at a regularly schedule AURA meeting." Prohibitory injunctive relief can be granted in favor of such a class so long as the regular meeting times and places are made known to the Court and to Defendants. The relief could prohibit harassment of individuals gathering at such times and places, and identifiability is satisfied by the simple presence of the individuals at any given meeting. The Court is of the opinion that all other requirements of Rule 23(a) & (b)(2) [6] are satis-

---

**6.** Rule 23 of the Federal Rules of Civil Procedure provides, in pertinent part:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued

fied by such a class definition, and is further of the opinion that Wayne Ribble is an adequate representative of such a class.[7]

■ The second alleged class is that of all gay people whose automobile license numbers were recorded by Defendants at the meeting of the Texas Gay Conference on 22 June 1974. This class is interested in the requested relief which would require destruction of police records. The asserted class representatives are Plaintiffs Cyr and Ribble, who were present at the meeting.

As previously discussed, the Court cannot certify any class limited to gay persons because of lack of identifiability. Again, however, the Court will interpret this class in light of the overall philosophy and intent of Plaintiffs' amendment as the class of "all persons" whose license numbers were taken. In this case, the identifiability of the class will depend on the existence and information contained in the police records that Plaintiffs seek to destroy. The facts surrounding the meeting in question were established at the hearing, and the Court is of the opinion that all the requirements of Rule 23(a) & (b)(2)[8] are satisfied by this class. The Court is further of the opinion that Ken A. Cyr and Wayne Ribble are adequate class representatives of this class.

■ The third alleged class is that of "all members" of the Metropolitan Community Church, allegedly represented by Plaintiff Anderson. This class is evidently interested in prohibitory injunctive relief. It was established at the hearing that there are 62 members on the roll of the Church, but that Rev. Anderson does not want to divulge their names. It is further established that approximately 25 to 30 persons attend each service; that not all members or persons in attendance are gay; and that services are conducted on a regular basis at a specific location.

The Court cannot certify a class composed of the membership of the Metropolitan Community Church unless the roll of its membership is divulged. Otherwise the class is not identifiable. But, if the Court liberally interprets Plaintiffs' class allegation as "all persons in attendance at the Metropolitan Community Church," the class becomes identifiable and meaningful relief is possible. This definition is in keeping with the philosophy and intent underlying the amended complaint, and the Court finds that it meets all the requirements of Rule 23(a) & (b)(2).[9] The Court further finds that Rev. Ron Anderson is an adequate representative of the class.

■ The final alleged classes are all "gay bar owners in the City of Fort Worth" and "all regular patrons of the gay bars in the City of Fort Worth, including but not limited to the Bailey Street Wherehouse, the 651 Club, the 500 Club, and The Other Place." The alleged representative of these classes is Plaintiff Presley, the owner of the Bailey Street Wherehouse. These classes are also evidently interested in the prohibitory injunctive relief.

The alleged class of all gay bar owners clearly fails for lack of numerosity under

as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . . .

7. The Court does not consider Ken A. Cyr to be an adequate class representative, since it was established at the hearing that he has moved since the filing of this lawsuit and now resides in Houston, Texas. The Court is therefore of the opinion that he lacks the requisite interest in the outcome of the suit to be an adequate class representative.

8. See note 6, supra.

9. See note 6, supra.

Rule 23(a)(1). Plaintiffs have only alleged four gay bars in their amended complaint, and, at the hearing, Plaintiffs could only name eight such establishments. Plaintiff Presley can, of course, proceed to prosecute his individual action.[10]

■ With regard to the alleged class of bar patrons, it was established at the hearing that the Bailey Street Wherehouse will often have a great number of patrons on a weekend evening; that most, but not all, of its patrons are gay; and that it is typical of other gay bars in Fort Worth.

The Court cannot certify a class of "regular patrons of gay bars" because meaningful relief cannot be granted to that class. It would be impossible for the police to distinguish "regular" patrons from "occasional" patrons, and it would be impossible to distinguish a "gay" bar from a "straight" bar. The Court can, however, fashion a valid class based on all persons attending any given bar. Accordingly, in line with the philosophy underlying the amended complaint, the Court will interpret this class as all persons present at any of the following bars, which were both plead and testified to at the hearing as being gay bars: the Bailey Street Wherehouse, the 651 Club, the 500 Club, and The Other Place. As previously discussed in connection with the AURA and Church classes, the identifiability of the members of the class, and the resultant meaningful relief, is insured by the fact that at any given time, the class is defined by the persons actually present.

The Court finds that this class, as so defined, meets the requirements of Rule 23(a) & (b)(2)[11] and that Charles Presley has sufficient interests identical to the members of this class to be an adequate representative of the class.

The Court reiterates that it is not here ruling on the merits of Plaintiffs' action. By this Memorandum and Order, the Court has merely conditionally established the form of Plaintiffs' alleged classes. The parties may now proceed to conduct discovery with regard to the merits of Plaintiffs' allegations, and this cause of action will be later determined on the basis of the factual development of the case, either at trial or by summary judgment. Defendants' motion to dismiss are improper in view of the present posture of the case. Defendants may, of course, later file motions for summary judgment or to dismiss after factual development of the case.

## III. ORDER

Accordingly, the Court ORDERS that, in view of the present posture of the case, Defendants' various motions to dismiss, for partial summary judgment, and to deny class certification be hereby denied without prejudice to reurging in the form of motions for summary judgment or to dismiss after factual development of this case through the discovery processes.

The Court further ORDERS that the following classes and named representatives be hereby conditionally certified under Rule 23(a) & (b)(2) of the Federal Rules of Civil Procedure for the sake of seeking the following specific relief in this cause of action:

(1) Ken A. Cyr and Wayne Ribble shall represent the class of all persons whose automobile license numbers or names were recorded by Defendants or their agents on 22 June 1974 at the Texas Gay Conference in Fort Worth, Texas, to seek (i) a declaration that such action was illegal and deprived the class members of their constitutional rights, (ii) a mandatory injunction requiring Defendants to destroy all illegally gathered material concerning the class, (iii) subsequent inspection by the Court to determine whether Defendants have complied with the mandatory injunction, and (iv) costs and attorneys' fees;

(2) Wayne Ribble shall represent the class of all persons who are in attendance at a regularly scheduled meeting of AURA in Fort Worth, Texas, to seek (i) a declaration that Defendants and their agents have en-

---

10. Other gay bar owners may be able to intervene as individual party Plaintiffs if they seek the same relief as is generally sought herein.

11. *See* note 6, *supra.*

gaged in harassment of the class by conducting investigations or surveillances of non-criminal activity by members of the class without probable cause to believe that criminal activity exists or otherwise denying them equal protection of the law, (ii) an injunction prohibiting Defendants from engaging in such activity, and (iii) costs and attorneys' fees;

(3) Rev. Ron Anderson shall represent the class of all persons who are present at the Metropolitan Community Church in Fort Worth, Texas, to seek the same relief as set forth for the class in paragraph (2) above; and

(4) Charles Presley shall represent the class of all persons present at the Bailey Street Wherehouse, the 651 Club, the 500 Club, or The Other Place in Fort Worth, Texas, to seek the same relief as set forth for the class in paragraph (2) above.

The Court will shortly enter an order setting schedule for disposition of this cause of action on the merits.