Cheryl Anne CROSBY, an infant who sues by her mother and next friend, Ruthanne CROSBY; Andrea D. Anderson, an infant who sues by her mother and next friend, Dolores E. Anderson; Tracy Lynn Cabral, an infant who sues by her mother and next friend, Janet Eileen Cabral; Louis C. Frank, III, an infant who sues by his father and next friend, Louis C. Frank, Jr.; Margaret Ruth Powell, an infant who sues by her father and next friend, Richard A. Powell, Sr.; Robert Joseph Reed, an infant who sues by his father and next friend, Richard Smith; Mary Lou Curtis; William E. Munday, Plaintiffs–Appellants,

and

Lynda L. Eichelis, Plaintiff,

v.

Harry F. HOLSINGER, Principal, Fairfax High School, Defendant–Appellee.

No. 87–1187.

United States Court of Appeals, Fourth Circuit.

Argued June 9, 1988.

Decided Aug. 4, 1988.

Rehearing and Rehearing In Banc Denied Sept. 2, 1988.

Stephen T. Yelverton (William A. Beeton, Jr., Altavista, Va., on brief) for plaintiffs-appellants.

Grady Kimel Carlson (Thomas J. Cawley, John F. Cafferky, Hunton & Williams, Fairfax, Va., on brief) for defendant-appellee.

Before PHILLIPS, SPROUSE and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

This is the second appearance of "Johnny Reb" in this court. Johnny Reb, the former cartoon symbol of the Fairfax High School Rebels, was eliminated by defendant-appellee Harry Holsinger, the school's principal, after he received complaints from black students and parents. Students protested his decision in a number of ways before filing this action. The district court initially dismissed it as frivolous, but we reversed. 816 F.2d 162 (4th Cir.1987). At trial, the court granted a directed verdict for Holsinger as to the broad "censorship" claim, and the jury returned a verdict for him on plaintiff-appellant Cheryl Crosby's narrower "protest restriction" claim. We affirm.

Holsinger acted to remove the symbol based on complaints that it offended black students and a suggestion by the school's Minority Achievement Task Force. He then allowed the students to choose a new symbol which was to be unrelated to the Confederacy.

After the elimination of Johnny Reb, the students protested by holding rallies at school, mounting a petition drive, attending a school board meeting, and displaying blue ribbons. Except for a single incident involving Crosby, Holsinger did nothing to interfere with these protests. In the one instance, he initially stopped Crosby from posting notices on school bulletin boards of the school board meeting before allowing it the next day. This incident is the basis of Crosby's individual claim.

■ While students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate," *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969), school officials need not sponsor or promote all student speech. *See Hazelwood School Dist. v. Kuhlmeier*, — U.S. —, —, 108 S.Ct. 562, 569, 98 L.Ed.2d 592, 605 (1988); *Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675, 681, 106 S.Ct. 3159, 3164, 92 L.Ed.2d 549, 558 (1986).[1] This is particularly true for anything that the public "might reasonably perceive to bear the imprimatur of the school." *Kuhlmeier*, — U.S. at —, 108 S.Ct. at 569, 98 L.Ed. 2d at ·605. There is a difference between tolerating student speech and affirmatively promoting it. *Id.*

■ A school mascot or symbol bears the stamp of approval of the school itself. Therefore, school authorities are free to disassociate the school from such a symbol because of educational concerns. Here, Principal Holsinger received complaints that Johnny Reb offended blacks and limited their participation in school activities, so he eliminated the symbol based on legitimate concerns. Except to make the rough threshold judgment that this decision has an educational component, we will not interfere, and it is clear that educational concerns prompted Holsinger's decision.[2]

---

1. Because we can decide this case under *Kuhlmeier* and *Fraser,* we assume that the students have a collective first amendment right in their school's symbol. That issue has not been decided authoritatively, and we do not reach it here.

2. Appellants argue that Holsinger created a public forum by opening the selection process for a new symbol to outside suggestions. School facilities, however, are deemed a public forum only if opened "for indiscriminate use by the general public," while "permitting limited discourse" does not create such a forum. *Kuhlmeier,* — U.S. at —, 108 S.Ct. at 568, 98 L.Ed.2d at 603. The outside input in this case is

■ Turning to Crosby's individual claim based on the one day delay in posting notices for the school board meeting, we must uphold the jury's verdict if "there was evidence upon which the jury could reasonably return a verdict for him." *Mays v. Pioneer Lumber Corp.*, 502 F.2d 106, 107 (4th Cir.1974), *cert. denied*, 420 U.S. 927, 95 S.Ct. 1125, 43 L.Ed.2d 398 (1975). Here, the jury could have found that there was only a de minimis violation in the one day delay. The jury could also have decided that Holsinger acted in good faith. *See Wood v. Strickland*, 420 U.S. 308, 321–22, 95 S.Ct. 992, 1000–01, 43 L.Ed.2d 214 (1975). Because there are at least two reasonable views of the evidence to support the verdict, we will not disturb it.

■ Under the recent Supreme Court decisions noted above, school officials have the authority to disassociate the school from controversial speech even if it may limit student expression. Principal Holsinger was within his power to remove a school symbol that blacks found offensive.

AFFIRMED.

limited discourse, not indiscriminate use, so we    do not apply the public forum doctrine.