**IOTA XI CHAPTER OF SIGMA CHI FRATERNITY, John Howlin, President, and John Singsank, Past President, Plaintiffs,**

v.

**GEORGE MASON UNIVERSITY and Kenneth Bumgarner, Dean, Defendants.**

Civ. A. No. 91–785–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 27, 1991.

Victor M. Glasberg, Victor M. Glasberg & Assoc., Alexandria, Va., for plaintiffs.

Paul Joseph Forch, Sr. Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM OPINION

HILTON, District Judge.

This matter comes before the court on plaintiffs' motion for summary judgment and defendants' motion to dismiss. In this action, the plaintiffs seek declaratory and injunctive relief for George Mason University's imposition of discipline on the plaintiff fraternity which has allegedly abridged the plaintiffs' right of free speech. Plaintiffs argue that the discipline imposed upon

them unconstitutionally punishes expression protected by the First Amendment. Defendants contend that the plaintiffs' conduct was not protected speech and that if protected speech, George Mason University has compelling educational interests at stake which justify the discipline imposed on plaintiffs.

This action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 and may give declaratory relief pursuant to 28 U.S.C. § 2201. The plaintiffs in this action are the Iota Xi Chapter of Sigma Chi Fraternity which is at George Mason University (GMU) and two members of the fraternity, the president and the immediate past president of the chapter. Defendant GMU is a public university maintained and funded in significant part by the Commonwealth of Virginia which was acting as an educational institution at all relevant times. Defendant Dean Bumgarner is the associate vice president and dean of student services at GMU who was acting on behalf of GMU at all relevant times.

For the past two years, a week long event known as Derby Days has been held at GMU by the Iota Xi chapter of Sigma Chi. Derby Days is a major social event for the chapter and is held to raise money for charity. One event during Derby Days has traditionally been the "Dress A Sig" contest in which members of the fraternity dress as caricatures of "ugly women".

During the week of March 11, 1991, Dominic Lapus, an Iota Xi chapter member acting as co-chair of the 1991 Derby Days program, submitted the printed Derby Days program for approval to Kathryn Schilling, GMU's assistant director of student organizations and programs. The program listed the following as one event: "Dress a SIG contest (dress coaches like ugly women.)". As in former years, university approval was sought. Ms. Schilling approved the Derby Days program on behalf of the university, after requiring numerous changes to be made in the proposed program. She required no changes whatsoever to be made relative to the proposed "ugly woman" contest.

The "Dress A Sig" event took place on April 4, 1991 in the cafeteria of the student union building on the campus of GMU. In that event, one of the participants dressed in black face, used pillows to represent breasts and buttocks and wore a black wig with curlers. One week later, several GMU student leaders signed a letter to Dean Bumgarner requesting the imposition of sanctions on the Iota Xi chapter of Sigma Chi as the "Dress A Sig" contest had offended them because it perpetuated racial and sexual stereotypes. On April 19, 1991 Dean Bumgarner announced the proposed discipline and clarified that discipline in a letter on May 1, 1991. The discipline imposed by Dean Bumgarner and GMU prevents the plaintiffs from holding social and sports activities for a two year probationary period and, during that same period, requires the chapter to submit other planned activities to the university for advance approval.

Plaintiffs and defendants agree that the First Amendment claims are ripe for summary judgment. As there are no material facts in dispute on the First Amendment claims, it is proper to resolve this issue on summary judgment.

 One of the fundamental rights secured by the First Amendment is that of free, uncensored expression, even on matters some may think are trivial, vulgar or profane. *Berger v. Battaglia,* 779 F.2d 992, 1000 (4th Cir.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 720 (1986). Because that fundamental right extends to students at a state university, a state university may not hinder the exercise of First Amendment rights simply because it feels that exposure to a given group's ideas may be somehow harmful to certain students. *Gay Alliance of Students v. Matthews,* 544 F.2d 162, 166 (4th Cir.1976); *Healy v. James,* 408 U.S. 169, 187–88, 92 S.Ct. 2338, 2349–50, 33 L.Ed.2d 266 (1972).

 Plaintiffs assert that the discipline imposed by GMU unconstitutionally punishes expression protected by the First

Amendment. Defendants, however, argue that the behavior of the plaintiffs at the "Dress A Sig" contest was not expressive and therefore, not protected speech. Defendants contend that only political and social speech are protected by the First Amendment and that this conduct is neither. However, the Supreme Court has held that activity such as nude dancing and performance in black face are protected expression under the First Amendment. *Barnes v. Glen Theatre, Inc.,* —— U.S. ——, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991); *Schad v. Borough of Mt. Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981); *Berger v. Battaglia,* 779 F.2d 992 (4th Cir.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 720 (1986).

In *Barnes v. Glen Theatre, Inc.,* —— U.S. ——, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), Indiana enforced a public indecency law which prevented the respondent establishments from providing totally nude dancing as entertainment. Although nude dancing was protected by the First Amendment, the Court held that the Indiana public indecency law was permissible. The Court found that the Indiana law sought to regulate conduct, specifically public nudity, and not an expressive message. 111 S.Ct. at 2463. The Court noted that " 'It is possible to find some kernel of expression in almost every activity a person undertakes ... but such a kernel is not sufficient to bring the activity within the protection of the First Amendment.' " *Id.* at 2462 (quoting *Dallas v. Stanglin,* 490 U.S. 19, 25, 109 S.Ct. 1591, 1595, 104 L.Ed.2d 18 (1989)).

In this case, however, GMU did not seek to regulate any conduct whatsoever. It was not the conduct of renting the auditorium, holding Derby Days, raising money for charity, providing entertainment, or performing a skit which prompted GMU to discipline the members of Sigma Chi. To the contrary, it was the expressive message conveyed by the skit which was perceived as offensive by several student groups which prompted GMU to discipline the fraternity. This skit contained more than a kernel of expression; therefore, the activity demands First Amendment protection.

Even if the activity is protected, the defendants contend that any infringement on the First Amendment rights of the Sigma Chi fraternity is permissible because compelling educational interests are at stake. In particular, the defendants assert that Sigma Chi's behavior undermines the education of minority and women students, the university's mission to promote learning through a culturally diverse student body, the university's mission to eliminate racist and sexist behavior on campus and the university's mission to accomplish maximal desegregation of its student body. Although the university has these interests, there has been no substantial or material disruption of GMU's educational mission. *See Bethel School District No. 403 v. Fraser,* 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986); *Healy v. James,* 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972); *Crosby v. Holsinger,* 852 F.2d 801 (4th Cir.1988). The student activity at issue in this action is consistent with GMU's educational mission in conveying ideas and promoting the free flow and expression of those ideas.

Furthermore, defendants have only alleged general, unspecified claims of harm to the students who were exposed to the "Dress A Sig" contest. "The First Amendment does not guarantee that other concepts virtually sacred to our Nation as a whole—such as the principle that discrimination based on race is odious and destructive—will go unquestioned in the marketplace of ideas." *Texas v. Johnson,* 491 U.S. 397, 109 S.Ct. 2533, 2546, 105 L.Ed.2d 342 (1989). As noted by the Fourth Circuit in *Berger v. Battaglia* a more appropriate response to the activities of the fraternity, and one consistent with the First Amendment "would have been instead to say to those offended by ... [the] speech that their right to protest that speech by all peaceable means would be as stringently safeguarded ... as would ... [the] right to engage in it." *Berger,* 779 F.2d at 1001.

Defendants also raise the issue of whether or not the cafeteria auditorium used by the plaintiffs is a public forum. However, that is not a compelling issue since GMU

permits the cafeteria auditorium to be used upon written application by student groups to hold charity events and to perform skits. In fact, GMU approved the plaintiffs' application to use the cafeteria auditorium on April 4, 1991.

Although appropriate time, place and manner restrictions on free expression are permissible, a state university may not suppress expression because it finds that expression offensive. *See Piarowski v. Illinois Community College*, 759 F.2d 625, 630 (7th Cir.) (racially and sexually offensive art work not subject to outright suppression by state school), *cert. denied*, 474 U.S. 1007, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985). In this instance GMU has disciplined the members of Sigma Chi because the activity was deemed offensive by them and not because the members violated any time, place or manner regulations imposed by the university on the "Dress A Sig" contest. In fact, Sigma Chi submitted a copy of a schedule of proposed events for Derby Days, including the "Dress A Sig" event, to the assistant director of student organizations and programs at GMU. At that time no objections to the event were made by GMU. "If there is a bedrock principle underlying the First Amendment, it is that the Government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 109 S.Ct. at 2544. The First Amendment does not recognize exceptions for bigotry, racism, and religious intolerance or ideas or matters some may deem trivial, vulgar or profane.

Plaintiffs' expression occurred at a charity social event in the cafeteria of the student union before an audience composed of students and non-students who paid money to witness a performance. Although the university disagreed with the message propounded by the fraternity's activity, GMU may not discipline the students by infringing on their First Amendment rights based on the perceived offensive content of the activity. "[O]ne of the most persistent and insidious threats to first amendment rights has been that posed by the 'heckler's veto,' imposed by the successful importuning of government to curtail 'offensive' speech at peril of suffering disruptions of public order." *Berger*, 779 F.2d at 1001 (citations omitted). In this instance, GMU sought to discipline the students based precisely on the "heckler's veto". That is not permissible.

The court need not reach the defendants' motion to dismiss as this summary judgment motion is dispositive. Summary judgment is granted in favor of the plaintiffs and the defendants are enjoined from imposing any discipline on the plaintiffs as a result of the activity of April 4, 1991.