John VASZLAVIK, Walter Perdue, Carol Hill, Bob Cotton, David Wee, Mike McCoy, Howard Valentine, Patrick L. Ellis, Arthur J. Gercken, Pamela Wilson, and Lanette Stewart, individually and on behalf of all persons similarly situated, Plaintiffs,

v.

STORAGE TECHNOLOGY CORPORATION, a Delaware Corporation, doing business in Colorado, Defendant.

Civ.A. No. 95–B–2525.

United States District Court, D. Colorado.

Nov. 9, 1998.

Gilbert M. Roman, Seth J. Benezra, John A. Culver, Roman, Benezra & Culver, Lakewood, CO, Todd J. McNamara, Todd J. McNamara, P.C., Denver, CO, for Plaintiffs.

Nancy J. Gegenheimer, Katherine J. Peck, Holme Roberts & Owen, LLP, Denver, CO, Dwight C. Seeley, Storage Technology Corp., Litigation Counsel, Louisville, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Plaintiffs, all former employees of defendant Storage Technology Corporation (Storage Tek), assert claims for wrongful discharge and for violations of the Employee Retirement Income Security Act of 1974 (ERISA), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (ADEA), and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (ADA). Plaintiffs submit a second motion to certify an ERISA class action under Fed.R.Civ.P. 23. After consideration of the second motion, briefs, and counsels' arguments at the November 6, 1997 hearing, I will grant the second motion to certify an ERISA class action.

### I.

Storage Tek, headquartered in Louisville, Colorado, produces high technology computer equipment. Plaintiffs allege in their Sixth Amended Complaint that layoffs of Colorado workers were based on age and Storage Tek's perception of Plaintiffs' use or anticipated use of company benefits, such as the self-funded medical plan. At a previous hearing, Plaintiffs limited the relevant period to between April 13, 1993, and December 31, 1996. Plaintiffs claimed violations, *inter alia,* of the ADEA and ERISA and sought certification of a class of plaintiffs for each claim.

On November 26, 1997, I issued an order (1997 Order) granting the Plaintiffs' motion to certify an ADEA collective action. *Vaszlavik v. Storage Technology Corp.*, 175 F.R.D. 672 (D.Colo.1997). Also, I denied, without prejudice, plaintiffs' Motion to Certify an ERISA Class Action and stated that I "[would] permit Plaintiffs to submit a second motion for certification of an ERISA class...." *Id.* at 685.

## II.

### A. *CLASS CERTIFICATION PURSUANT TO FED.R.CIV.P. 23*

Plaintiffs seek certification of a class pursuant to Fed.R.Civ.P. 23 for violation of ERISA. Plaintiffs each request that they be designated as representatives of the ERISA class. ERISA, 29 U.S.C. § 1140 (section 510) prohibits:

> any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled.

■ To establish a *prima facie* case of ERISA benefits discrimination, plaintiffs must demonstrate: "(1) prohibited employer conduct; (2) taken for the purpose of interfering; (3) with the attainment of any right to which the employee may become entitled." *Maez v. Mountain States Tel. and Tel., Inc.*, 54 F.3d 1488, 1504 (10th Cir.1995) (quoting *Gavalik v. Continental Can Co.*, 812 F.2d 834, 852 (3rd Cir.1987)). Plaintiffs seek to represent the proposed class only to the extent their claim is based on a pattern and practice of discrimination, which is subject to the bifurcated approach of *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). *See also Gavalik, supra.* If the representative plaintiffs show a pattern and practice of discrimination in phase one of the trial, the class members are entitled to a presumption that they were individually discriminated against.

As outlined in my 1997 Order, generally, Plaintiffs allege the following. From April 13, 1993, through December 31, 1996, Storage Tek engaged in corporate strategic planning which identified as a major corporate financial problem the high cost of employees with health problems or potential health problems. *Id.* at 682; Sixth Am.Comp. ¶ 22. Based upon these concerns, Storage Tek engaged in a pattern and practice of benefits discrimination, through its layoffs, which resulted in the unlawful termination of thousands of employees. Sixth Am.Comp. ¶¶ 27, 29–40. For example, the named plaintiffs allege they were laid off for a variety of reasons relating to health-care costs, including age, personal illness, illness of an insured family member, etc. In general, Storage Tek treated employees who were not perceived as placing a burden on the company's benefits plans more favorably than those who were perceived as placing a burden on the company's benefits plans. Sixth Am.Comp. ¶¶ 29–42.

### 1. *Legal Standards for Class Certification under Fed.R.Civ.P. 23*

■ Rule 23 sets forth a two-part test for the maintenance of a class action. First, plaintiffs must satisfy the four prerequisites of Rule 23(a). Second, one of the three subsections of Rule 23(b) must also be satisfied. Plaintiffs bear the burden of demonstrating that all the prerequisites for class designation are met. *Rex v. Owens*, 585 F.2d 432, 435 (10th Cir.1978). Class action certification is discretionary with the trial court judge, *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir.1982), and may be altered, expanded, subdivided or abandoned as the case develops. *See Daigle v. Shell Oil Co.*, 133 F.R.D. 600 (D.Colo.1990); *Dubin v. Miller*, 132 F.R.D. 269, 270–75 (D.Colo.1990). Because of the flexible nature of class certification, I am to favor the procedure. *Esplin v. Hirschi*, 402 F.2d 94, 99 & 101 (10th Cir.1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969). I will certify, however, only after rigorous analysis of the Rule 23(a) prerequisites. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir.1988).

### B. *PREVIOUS MOTION FOR ERISA RULE 23 CLASS CERTIFICATION*

In the 1997 Order, I noted that the *Teamsters* bifurcation of liability and remedy, adopted by this Court in certifying this ADEA collective action, has also been adopted in the context of ERISA class action. *See Gavalik*, 812 F.2d at 858–63. (*Teamsters* bifurcation of liability and remedy applicable to pattern and practice class action under ERISA § 510).

In their initial motion for ERISA Rule 23 class certification, Plaintiffs proposed the following ERISA class definition:

> All non-bargaining unit employees who were laid off by Defendant because of their perceived use or perceived anticipated use of company benefits, due to their age, actual utilization of corporate benefit plans, and life style choices, including smoking and weight, pursuant to company wide layoffs between April 13, 1993, and December 31, 1996.

*Id.* at 684.

I denied Plaintiffs' ERISA motion because they failed to define adequately the proposed class. Specifically, the proposed class definition was overinclusive. *Id.* at 684.

### C. *PROPOSED CLASS DEFINITION IN SECOND MOTION FOR ERISA CLASS CERTIFICATION*

Plaintiffs now propose the ERISA class be defined as:

> All employees who were over the age of 40 at the time of their layoff by Defendant, between April 13, 1993, and December 31, 1996, because of their perceived above-average use or perceived anticipated above-average use of company benefits.

Citing *Hagen v. City of Winnemucca*, 108 F.R.D. 61, 64 (D.Nev.1985), Defendant argues that a class definition, which contains causation language, may not be certified.

■ Courts may not consider the merits of the claim at certification. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Defendant has confused class membership with liability and has ignored the bifurcation of liability and remedy in a pattern and practice class action certified under Fed.R.Civ.P. 23(b)(2). Here, the clause "because of ..." is merely descriptive of the claim, not the class.

■ Contrary to Defendant's contention, putative class members will not have to prove individual perception or causation in order to become members of the class. Rather, the language regarding perception and causation in Plaintiffs' class definition is a description of Plaintiffs' legal claim, not a prerequisite to membership in the class. The question of perception and causation will be resolved in the liability phase, where I will determine whether the Plaintiffs have proved by a preponderance of evidence that: (1) Defendant perceived employees over the age of 40 as having higher actual or anticipated usage of company benefits; and (2) that its perception motivated the layoffs of those employees in violation of ERISA.

If the Plaintiffs prevail in the liability phase, there would be no need to conduct a separate factual analysis to identify which individuals were perceived as having higher health care costs and who were discriminated against on that basis. Instead, injunctive and declaratory relief would be afforded the older employees who were laid off by Defendant during the relevant time frames. *See McLendon v. Continental Group, Inc.*, 7 E.B.C. (BNA) 2408, 2413, 1986 WL 11789 (D.N.J.1986) (in ERISA § 510 class action, "[f]irst plaintiffs must show the discriminatory pattern and practice; upon such a showing, prospective relief is available. In the second stage, defendant has the burden of showing that particular plaintiffs were not harmed by the discriminatory practice.").

Contrary to Defendant's argument, Plaintiffs' "perceived as" class is not defined by subjective criteria. Rather, it is objectively identifiable as the class of workers over the age of 40. Also, it is based upon sufficient pattern and practice evidence, direct and circumstantial, that Defendant perceived the class of older workers as having higher benefits usage or anticipated higher benefits usage.

For example, Plaintiffs presented evidence that Storage Tek's Human Resources (HR) department viewed Storage Tek's aging work

force as a problem because it believed that "medical costs increase with older employees." Pltfs. Ex. A, Bates Stamp No. 14035. Also, a proposed 401(k) plan expressed, in part, the following concerns: "1) the Storage Tek workforce is aging and does not have adequate resources to retire. If the current trend continues ... medical expenses will increase in the future; 2) aging employees increase medical costs; and 3) if the current growth in employees over 50 persists, the health care costs will increase dramatically." *Id.* at Bates Nos. 14057, 14062.

Additionally, in HR strategic planning documents, in which Defendant set five year goals, Defendant stated its perceived correlation between an aging work force and an increase in health care costs. For example, HR noted that "the growing costs for employee health care are significantly impacted by demographic changes taking place," such as the fact that "the average age of the work force is increasing (currently 38 at Storage Tek.)". *See* Ex. D, Bates 13676. Also, the 1993 HR strategic plan opined that "aging populations without adequate retirement planning will cause a burden on ... medical systems." *See* Pltfs. Ex. E.

There is evidence that in HR meetings, Storage Tek stereotyped older employees as having higher health care costs, based on its apparent assumption that older workers are more likely to abuse alcohol. Pltfs. Ex. F, ¶ 5. Similarly, Plaintiffs proffer evidence that former Storage Tek executive vice president Bud Sleek told a group of Storage Tek employees that employees who smoked were a financial problem for Storage Tek, because smokers increased medical care costs, particularly as smokers became older. Pltfs. Ex. G, p. 35. And, a Storage Tek document published in January 1995 entitled "White Paper Vision 2000" states:

Over 1,500 employees at Storage Tek are over age 50 and this number will nearly double over the next five years. Many of our older employees are working beyond age 70 because they don't have adequate monetary resources to retire. This puts a strain on our employee profile where older workers may not be adequately trained for new technologies, have lower productivity,

and are relatively high cost users of medical benefits. These employees are a higher cost to companies than younger workers but because of a lack of retirement options, these older employees are forced to remain in the work force. The older employees are also looking for flexible work schedules, a focus on family issues, lifestyle education, medical coverage and help in planning for retirement.

Pltfs. Ex. H, Bates W42976.

In a related vein, Plaintiff Stewart testified that Mr. Sleek told a group of employees that:

"the (medical) costs were rising, and ... smokers were only one of the groups of people that concerned corporate entities; that you know, it was smokers now; maybe next time it would be people with a weight problem or people who had made other lifestyle choices that would put them at risk from a health standpoint."

Ex. KK, p. 6. The report expresses Defendant's alleged dual concern about older employees and increased benefit costs, by including the following phrases: (1) implications of health care costs for aging; (2) health care costs rise dramatically as employees age; and (3) employees and their spouses cost the company significantly more for benefits (medical and life insurance, short term disability) after age 60. Pltfs. Ex. H, Bates Nos. 42980; 43000. Moreover, Richard Ralston, vice president of manufacturing, testified that he openly discussed his belief that older employees were more likely to suffer workplace injuries. Pltfs. Ex. I, pp. 43044.

One focus of Storage Tek since 1989, as demonstrated in most of its HR strategic plans, was health costs control and promotion of wellness as critical corporate goals. Pltfs. Ex. M–1, Bates No. W09115; Ex. N, Bates No. W07360; Ex. O, Bates No. 9033; Ex. P, p. 24. As early as 1991, the HR strategic planning process recognized that "the competitive pressures of the marketplace in general and our business environment in particular emphasize the need to reduce costs and maximize profits" and recognized "the need for progressive HR intervention" concerning the fact that "the costs of current health care

benefit plans is increasing at more than 22% per year." Ex. O, p. 8. The 1992 HR strategic plan also recognized a "(c)ontinued pressure to maximize profits, reduce costs and add value (target of $10 billion by 2000)" in the context of corporate concerns with escalating health costs. Ex. R, p. 51.

There is evidence that in response to Defendant's concerns about health care costs, HR designed a strategy to "implement an integrated wellness program" designed to "surface employee health issues which are inconsistent with quality performance." Ex. S, p. 6. And planning documents equated an employee's health and fitness with the employee's productivity and cost to the company: "(t)he health and fitness of the work force will be recognized as a factor of productivity, quality, and cost effectiveness, as well as a matter of employee satisfaction." Ex. O, p. 9.

Plaintiffs contend that Storage Tek attempted to track the health care usage of its individual employees. There is testimony that in 1995, Defendant hired a temporary employee to compile a "list of employees with high health care costs includ(ing) the first initial and last name of the employee, the total expense for medical care incurred, and a breakdown of the medical care costs between employee expenditures and dependent expenditures." Ex. T, ¶ 2; Ex. U, ¶ 2. Similarly, in a meeting concerning the Americans With Disabilities Act ("ADA"), HR manager, Mike O'Neill, proposed the use of a special code for disabled employees in corporate personnel records, so that Defendant could identify, track, and run a total of disabled employees within Storage Tek. Ex. V.

Plaintiffs proffer evidence that Storage Tek's alleged stereotypes as to older workers and its bias towards individuals with high health care costs was communicated to corporate executives from the vice president level and higher through HR strategic planning meetings and copies of HR annual strategic plans. Ex. I, pp. 40–47; Ex. W., pp. 49–57; Ex. X, pp. 171, 214–15; and Ex. Y, pp. 62–73. Moreover, in meetings concerning topics that the corporate education department would be teaching to departmental managers, HR representatives discussed the high cost of health care at Storage Tek. Ex. F, ¶ 5. In particular, Plaintiffs present evidence that education specialists were told to instruct managers in the identification of employees with high health risks. In that context, HR instructed that alcohol abusers could be identified, in part, by their age. Also, Storage Tek education specialists were told that people over the age of 40 were more likely to have drinking problems. *Id.*

Plaintiffs' evidence suggests that the HR department believed that the termination of older employees was an acceptable method for reducing the burden to Defendant's self-funded health plans that it believed older workers represented. For example, in its 401(k) proposal, the HR department considered "terminating employees" as a solution to the "associated problems" of older employees. Ex. A, Bates No. W14059. In addition, a former vice president states that in the context of meetings with HR generalists concerning reductions in force, "there was an undercurrent that older employees should be laid-off". Ex. Z, ¶¶ 2–3. Furthermore, a former Storage Tek manager testified that he was instructed by a manufacturing vice president and HR representatives that health care costs and age should be factors in determining which employees were selected for layoff. Ex. DD, pp. 42–43.

As to the specific age of 40 contained in the proposed ERISA class definition, Plaintiffs present evidence that there existed a strategic plan which included Storage Tek's belief that the increasing number of employees *over the age of 40* was a significant challenge to the company. Similar topics were discussed in management meetings during the same time period. Ex. D, ¶¶ 2–3 (emphasis added).

Taken in isolation, many of Storage Tek's concerns and planning strategies can be viewed as neutral or even laudatory. However, viewed as a whole, this evidence is sufficient to meet Plaintiffs' Rule 23 burden on their ERISA claim.

Now, the proposed class definition is consistent with my statements in the 1997 Order that I was "not concerned with defining the class in terms of perceptions" and that "if the

evidence supported it, Plaintiffs could limit the class to those employees who were ... over a certain age....." *Vaszlavik,* 175 F.R.D. at 684–85. Individuals who were "perceived" as members of the protected class can thus be identified based on the objective criteria of age. *See e.g. Smith v. McGriff,* 434 F.Supp. 673 (M.D.Ala.1976); *Cyr v. Walls,* 439 F.Supp. 697 (N.D.Tex.1977) (classes certified based upon perceptions, where individuals who were perceived as members of protected classes could be identified based on objective criteria).

Similarly, the causation reference in Plaintiffs' proposed class definition is not an additional definitional hurdle that must be proven for each individual to participate in the class. Indeed, the class definition I adopted in certifying Plaintiffs' ADEA collective action included similar causation language. *See Vaszlavik,* 175 F.R.D. at 677.

Plaintiffs' new class definition conforms specifically to my requirement that, "[a]t a minimum, Plaintiffs must narrow the class to include only those who Defendant perceived as using, at that time or in the future, greater than an appropriately defined level of company benefits, such as older employees." *Id.* at 685.

Although Plaintiffs' proposed ERISA class is composed of the same former Storage Tek employees eligible to participate in the ADEA collective action, certification of an ERISA class is necessary to redress completely Defendant's alleged wrongdoing. Specifically, because Plaintiffs' proposed ERISA class is an "opt-out" class, brought pursuant to Fed.R.Civ.P. 23(b)(2), and not an "opt-in" collective action under the ADEA, Plaintiffs' proposed ERISA class action affords remedy to all class members, unless they choose to opt out. Significantly, Plaintiffs' proposed ERISA class furthers Congressional intent to protect employee benefit plans by seeking an injunction under the ERISA requiring Defendant to reinstate health care and benefits coverage to the putative class.

Having concluded that the Plaintiffs' proposed class definition is adequate to define the class so that potential class members are identifiable, I turn to the analysis of Fed. R.Civ.P. 23(a).

### III.

### A. *FED.R.CIV.P. 23 ANALYSIS*

To proceed as a class action, the prerequisites of Fed.R.Civ.P. Rule 23(a) must be satisfied. Rule 23(a) provides that:

One or more members of a class may sue or be sued as representative parties on behalf of all only if:

1. the class is so numerous that joinder of other members is impracticable (numerosity);

2. there are questions of law or fact common to the class (commonality);

3. the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and

4. the representative parties will fairly and adequately protect the interest of the class (adequacy of representation).

For the following reasons, I conclude that the prerequisites of Rule 23(a) are satisfied.

#### 1. *Numerosity*

█ Plaintiffs putative class can now be identified with sufficient precision. The members of the putative ERISA class are the individuals who were identified as eligible to opt-in to the previously certified ADEA class. In Plaintiffs' co-extensive ADEA collective action, Plaintiffs sent out 1,266 notices to putative class members. I conclude that joinder of 1,266 plaintiffs is impracticable.

#### 2. *Questions Of Law Or Fact Common To The Class*

█ According to Plaintiffs, common issues include:

1. Defendant engaged in a pattern and practice of benefits discrimination through its layoffs;

2. Defendant targeted employees over the age of 40 for layoff because of their perceived higher benefits usage;

3. Defendant intended to interfere with its employees' ERISA plans;

4. Plaintiffs were terminated pursuant to a layoff;

5. each Plaintiff relies on statistical proof of a pattern and practice of discrimination; and

6. each Plaintiff seeks injunctive and declaratory relief.

Moreover, Defendant's defenses in this case raise other common questions of both fact and law. For example, Defendant claims that Plaintiffs' layoffs were based upon "legitimate business justifications" and not perceived benefits utilization. *See* Answer to Plaintiffs' Sixth Amended Complaint, Affirmative Defense No. 6.

My previous holding that the same eleven proposed class representatives were "similarly situated" with respect to their ADEA claim applies with equal force to the ERISA claim:

> The sole issue in the liability phase is whether Defendant engaged in a pattern and practice of discrimination... Therefore, phase one of the trial will not be affected by the expansion of this claim from 11 named Plaintiffs to the hundreds who might be encompassed by the proposed class. Any disparities among the employment situations of the individual plaintiffs are irrelevant during the liability phase, judicial economies are served by proceeding collectively, and the Defendant is not prejudiced.

*Vaszlavik,* at 680.

### 3. *Typicality*

In certifying Plaintiffs' ADEA claims as a collective action, I stated that "plaintiffs' ADEA and ERISA claims are complimentary and do not conflict so as to preclude the same named plaintiffs from representing each class." *Id.* at 681. The United States Supreme Court in *Hazen,* 113 S.Ct. at 1707 sanctioned the assertion of parallel ERISA and ADEA claims under almost circumstances similar to those in this case:

> We do not preclude the possibility that an employer who targets employees with a particular pension status on the assumption that these employees are likely to be older thereby engages in age discrimina-

tion. Pension status may be a proxy for age, not in the sense that the ADEA makes the two factors equivalent, but in the sense that the employer may suppose a correlation between the two factors and act accordingly. Nor do we rule out the possibility of dual liability under ERISA and the ADEA where the decision to fire the employee was motivated by both the employee's age and his pension status.

*Id; see also Krueger v. New York Tel. Co.,* 163 F.R.D. 433 (S.D.N.Y.1995) (court certified ERISA class action and ADEA collective action for same group of plaintiff representatives).

### 4. *Adequacy of representation*

I may certify a class if "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). This requirement dovetails with the last in that typicality ensures that the class representatives' claims resemble the class claims to an extent that adequate representation can be expected. *In re Intelcom Group,* 169 F.R.D. 142, 148 (D.Colo.1996).

What constitutes adequate representation is a question of fact that depends on the circumstances of each case. 7A Wright and Miller, § 1765 at 269. Criteria for assessing adequacy of representation include whether the plaintiff has common interests with the class members and whether the representative will vigorously prosecute the interests of the class through qualified counsel. *Id.* The plaintiff has the initial burden to show facts to support a finding that it will adequately protect the interests of the class. 2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 7.24 (3d ed.1992).

Here, based on the specialized experience in class action suits, the conduct of Plaintiffs' counsel to date, and the typicality of the representatives and class members claims, I conclude that the proposed representative Plaintiffs will fairly and adequately protect the interests of the class. *See* Pltfs. Ex. JJ.

In my 1997 Order, the ADEA and ERISA claims were held to be "complimentary" and not in "conflict so as to preclude the same named Plaintiffs from representing each

class." *Vaszlavik,* 175 F.R.D. at 681. Thus, as with the typicality requirement, in certifying the ADEA collective action, my holding that the representative Plaintiffs will fairly and adequately protect the interest of the class is equally applicable to the ERISA claim.

## B. *RULE 23(B)(2) REQUIREMENTS*

Once Plaintiffs have met the requirements of Rule 23(a), they must satisfy the requirements of one of the sub-sections of Rule 23(b). Plaintiffs rely on Rule 23(b)(2) which provides in pertinent part:

(b) *Class Actions Maintainable* An action may be maintained as a class action if the prerequisites of sub-division (a) are satisfied and in addition . . .

2. The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Plaintiffs' Complaint seeks declaratory and injunctive relief. *See* Sixth Amended Complaint, ¶ 1, pp. 14–20. Specifically, Plaintiffs seek:

1. a declaration that Defendant engaged in a pattern and practice of discriminating against perceived high benefits users, who were over the age of 40, in violation of § 510 of ERISA;

2. a declaration that, in the remedial phase, the class members are entitled to a presumption that they were individually discriminated against in violation of § 510 of ERISA;

3. an order enjoining Defendant from discriminating against workers over the age of 40 in its layoff decisions because of perceived above-average benefit usage or perceived above-average anticipated benefit usage; and

4. an order requiring Defendant to reinstate all health care and benefits coverage to each member of the class who prevails in the phase-two proceeding, or alternatively, to pay all associated health care and benefit costs for all such employees.

I also held that, "at least the liability phase of Plaintiffs' ERISA claim is ideal for class treatment under Fed.R.Civ.P. 23(b)(2) because it involves only class-wide declaratory and/or injunctive relief." *Vaszlavik,* 175 F.R.D. at 683.

Plaintiffs have met their Rule 23 burden on their ERISA claim. Although the certification remains susceptible to later modification or revocation, I conclude that plaintiff class certification is superior to other methods.

Accordingly, IT IS ORDERED that:

1. Plaintiffs' second motion to certify an ERISA class action is GRANTED;

2. The ERISA claim in this action shall be maintained as a plaintiff's class action;

3. Plaintiffs John Vaszlavik, Walter Perdue, Carol Hill, Bob Cotton, David Wee, Mike McCoy, Howard Valentine, Patrick L. Ellis, Arthur J. Gercken, and Lanette Stewart, are hereby certified as representatives of a plaintiff class;

4. The ERISA plaintiff class shall consist of:

All employees who were over the age of 40 at the time of their layoff by Defendant, between April 13, 1993, and December 31, 1996, because of their perceived above-average use or perceived anticipated above-average use of company benefits; and

5. The costs attendant to Plaintiffs' ERISA class certification shall be borne by Plaintiffs.